**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Robert Alexander McCollough,<br><br>Defendant. | No. CR-15-00336-001-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant's Motion to Reduce Sentence/Modify Judgment Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release/Home Confinement), which is fully briefed. (Docs. 97, 99, 100.) Defendant seeks a compassionate modification of his sentence after contracting COVID-19, arguing that his chronic asthma, oromandibular dystonia and uncontrolled endocrine/autoimmune disorder put him at increased risk of a severe outcome. The Court held a status conference with counsel on May 28, 2020 to receive an update on Defendant's current medical condition. (Doc. 102.) For the reasons set forth herein, Defendant's motion is denied.

**I. The First Step Act**

Until passage of the First Step Act of 2018 ("FSA"), early release was allowed only upon motion of the Director of the Bureau of Prisons ("BOP"). However, under the FSA a defendant can bring a motion to the Court after exhausting his administrative remedies:

> [T]he court upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted

> all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

18 U.S.C. § 3582(c)(1)(A).  The Court may grant the reduction request if it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (citations omitted) ("Although it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons.").  The purpose of the compassionate release provisions of the FSA is to allow defendants with extraordinary and compelling reasons to receive an expeditious resolution of a request for early release.  An expeditious determination is especially important in a situation, like here, in which the coronavirus is rapidly spreading and the likelihood of contracting COVID- 19 increases substantially by remaining in the BOP facility.

## II. Exhaustion of Administrative Remedies

The starting point of the Court's inquiry is whether the defendant has exhausted his administrative remedies by filing an administrative request for compassionate release with the warden of his facility.  Defendant's sister, Lyndsay Harrington, sent a letter dated March 31, 2020, to Warden Ponce asking that her brother be granted a "Compassionate Release" pursuant to the FSA.  (Doc. 97-1 at 5-6.)  Her letter provided detailed and specific information about Defendant's pre-existing medical conditions—the same as those raised in Defendant's motion—that made him especially vulnerable to a bad outcome because he had contracted COVID-19.  The Government argues that Defendant failed to exhaust his administrative remedies because the letter to the warden came from the Defendant's sister and not the Defendant.  It does not contend that the letter failed to identify Defendant or to provide enough facts or detail for the warden to act.

Generally, Congress imposes exhaustion requirements in order to serve "the twin purposes of protecting administrative agency authority and promoting juridical efficiency." *Fones4All Corp v. F.C.C.*, 550 F.3d 811, 818 (9th Cir. 2008) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Ignoring the letter from Defendant's sister serves neither purpose. Ordinarily, the administrative request for compassionate release submitted by a third party would not satisfy the exhaustion requirement. However, these circumstances are not ordinary. The request is from a family member of a quarantined prisoner during a pandemic and the letter is sufficiently specific and detailed for the warden to understand what is requested and to act. The intent and spirit of the FSA would be frustrated if the letter were not deemed a request for administrative compassionate release. Defendant's requirement of exhausting his administrative remedies has been satisfied.

**III. Extraordinary and Compelling Reasons**

Defendant's motion is based on his fear that he will suffer an adverse outcome due to contracting the virus.[1] Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. Neither side addressed these issues until the Court's May 28, 2020 status conference. Counsel informed the Court that Defendant had a mild case of the virus and has recovered. There is no evidence that the circumstances surrounding Defendant's

---

[1] Defendant asserts, "[g]iven his underlying high-risk medical conditions, Mr. McCollough has a unique susceptibility and potential for severe symptoms from the fatal COVID-19 virus while housed in a crowded facility with limited access to essential medical treatment." (Doc. 97 at 1.) He further explains that his underlying conditions, which put him at high risk, have been untreated while he has been waiting months for follow-up and treatment while in the Bureau of Prisons: "Mr. McCollough has uncontrolled and untreated medical conditions that both weaken his immune system and may become life threatening given his positive Covid-19 testing and lack of follow-up on BOP specialist referrals." (Doc. 97 at 6.) The Government responds, "BOP has taken a proactive approach to protect inmates. More beds and more housing have accommodated a more spread out living arrangement plan for the inmates. Telephone and email stations have been restricted as they are high touch locations. Most importantly, for asymptomatic or pre-symptomatic inmates, officials describe them being isolated quickly to prevent them from transmitting the virus to others." (Doc. 99 at 3.) Both sides acknowledge that Defendant tested positive for COVID-19 nearly two weeks before bringing his motion but nonetheless argue about the Defendant's chances of contracting the virus, a non-issue. The ineffective measures that BOP has taken to prevent the spread of the virus, upon which the Government relies, are irrelevant.

health or treatment are extraordinary or compelling.  Arguments that the test results may be inaccurate or that Defendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities.

**IT IS ORDERED** that Defendant's Motion to Reduce Sentence/Modify Judgment Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release/Home Confinement) (Doc. 97) is **DENIED**.

Dated this 29th day of May, 2020.

Douglas L. Rayes
United States District Judge