FILED ___ LODGED
___ RECEIVED ___ COPY

NOV 04 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

October 21, 2020

The Honorable Judge Douglas L. Rayes

United States District Court (9th)

Sandra Day O'Connor U.S. Courthouse, Suite 526

401 West Washington Street, SPC 79

Phoenix, AZ 85003-2162

Re:  Robert McCollough, #39089408

   Case # CR-15-00336-PHX-DLR

Dear Judge Rayes:

My name is Cheryl Silverstein and I am Robert McCollough's mother, living in San Tan Valley, AZ.  Rob is 43 years old and upon entering incarceration in March 2015, his health issues were diagnosed and treated by a primary care doctor. I realize that in prison, inmate's are not going to get top notch medical treatment, but he shouldn't be forced to suffer from the BOP's indifference to deteriorating health.

On May 29, 2020, you denied a COVID-19 related compassionate release petition for my son, who was sentenced by you in 2016 and is currently incarcerated at Terminal Island, San Pedro, CA. I have attached a copy of your denial so that you'll have an instant opportunity to review your justification for the denial. As well I have provided his original case number so that during your consideration of my request, you may refer to his original charges and sentencing. I have written you before (June 2017) after you denied another court motion from Rob requesting a wording change so that he could ask to be transferred to a facility in Arizona, closer to his family and based on your recommendation in your original sentencing. There was a slight difference in your recommendation on two of the vital sentencing documents…one recommended he be sentenced "in Arizona" and the second recommended he be sentenced "in or near Arizona"…the difference being that the FBOP DSCC used the "in or near Arizona" to place him almost 500 miles from his home, family and friends, in Victorville, CA.  You honored my motion and the wording was changed so that both sentencing documents matched. But his AZ transfer request was still denied by Victorville and the BOP.  Shortly after that he was given a management variable to a low and transferred to Terminal Island…just before the Victorville FCI II became a facility for immigrants. I mention all of this as background and because I was grateful that you granted my motion to help in the possible transfer back to AZ so that we could visit him much more frequently.  I knew that you had a heart and understood that my son needed visitation from his family, as any inmate would fair better during a long incarceration.

In the original compassionate release petition (May 2020) his pro bono attorney, Kristie Ortega, included his medical history and explanation of his medical vulnerabilities. He has been suffering and his health has been deteriorating considerably while the BOP seems indifferent and refuses diagnosing and treating him. I am asking you today to reconsider Rob's compassionate release petition so that we can get him home and to a doctor so that he can be immediately scheduled for labs and testing, diagnosed and treated. I believe his life depends on it. Please consider this…

My son's health is in crisis…he has had ongoing off-the-chart endocrine, pituitary, testosterone, and other labs results for over a year. His Terminal Island assigned doctor told him a year ago that he has thyroid lesions, and warned him he could have thyroid cancer…and promised him they would address and diagnose with MRI/CAT scans all over a year ago…and to date nothing has been done…no tests, no diagnoses, and very little treatment since they don't know what is wrong. You may or may not have these BOP medical records from Kristie Ortega's petition…I'm not sure how extensive the medical records were that were provided to the court in May. It's been another five months and still nothing has been done. These thyroid lesions have caused narrowing of his esophagus and he chokes on food frequently…another reason this is a crisis…the next time he chokes could be his last! He arrived at Terminal Island with a condition called oromandibular dystonia, which he developed while at the CCA in Florence, AZ (2015) while waiting to be sentenced. This condition causes involuntary muscle spasms in his neck and jawline…this causes great discomfort and headaches and he has to clench his teeth to try to calm or stop the nearly constant spasms. For a few years now this has caused grinding down of his teeth to alleviate spasms, to the point that now the dentin is exposed in several of his teeth…a dangerous condition that if infected can cause sepsis and even death considering the BOP's indifference to inmate sickness. The Terminal Island dentist tells him that they will only pull bad teeth and refuses to fix them…pulling all of these bad teeth would leave him with less than half his teeth. He needs every last one of his teeth to chew his food down to a puree so that he doesn't choke! In the last few months he has had a growth mid-chest that has grown from pea to marble size. No tests, biopsies, nothing has been addressed yet for what could be a tumor…unknown whether it's benign or cancerous. Rob is and has been a model inmate, he is bipolar, and he has had asthma all his life for which he has an inhaler by his side at all times. His immune system is greatly compromised due to his lifelong asthma issues and his thyroid and/or pituitary issues but they have yet to run tests to diagnose him. I believe that my son's civil rights are being violated. I don't believe that what my son is being told is correct in regards to the dental issues…that they only thing the BOP can do is pull teeth…that they cannot fill or do root canals or anything other than removing a bad tooth…in my son's case there are many. The oromandibular dystonia that has caused the teeth grinding has ruined his teeth right down to the dentin but has been left with no dental work. He chokes frequently on food due to the narrowing of his esophagus from the thyroid lesions. He has no idea what the growth is on his chest but these aren't things that the BOP should be ignoring. My son is paying his dues to society for his wrongs but by all means he/we did not expect that he would be sent to a facility who is responsible for his medical and dental care

during his incarceration, that would show absolute indifference to his multiple requests for help.

Again, I am asking you to reconsider his compassionate release petition so that we can get him home and to a doctor and a dentist to get these life-threatening medical conditions diagnosed and treated. I know that you are in a position to consider the recidivism of an inmate, the character of an inmate, and the original crimes…to which I say Rob is the most compassionate kid ever, he loves his family, he loves his fellow inmates, and he will do anything to help another person struggling for help. He knows that his bipolarism and mental health issues, that were not taken very well care of before he committed his crime, are the number one priority when he is released. Right now it is my son who is struggling for help…he is scared, we are scared, and these life-threatening health issues need to be addressed…I have written many voice-a-concern messages to the BOP and gotten absolutely no response. I have spoken on many occasions with Joy Ringwood in the medical director's office at the BOP Western Regional office in Stockton, however she is no longer working for the BOP…otherwise she would have helped advance his medical treatment. She was instrumental in resolving medication issues for Rob and always returned my calls with a day. I no longer have her to turn to. My son needs help before he succumbs to whatever these medical conditions that have gone undiagnosed consist of. The COVID-19 pandemic is no reason whatsoever to allow health deterioration and crisis in an inmate's life. His May 2020 compassionate release petition showed clear evidence that he has family that have a home for him and care enough about him to make sure that upon his release we will all be backing up his zest for life, he will be moving forward with a positive direction in life, to become a model citizen, and he has the right to live a lot longer life than we all fear at this moment.

Thank you for taking the time to read my request. I would really appreciate your deep reconsideration of granting a compassionate release to Rob…he deserves much better than what he is getting from the BOP.

Regards,

*Cheryl Silverstein*

Cheryl Silverstein
640 W Blue Ridge Dr
San Tan Valley, AZ 85140
480-600-3462

Enc.

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Robert Alexander McCollough,<br><br>Defendant. | No. CR-15-00336-001-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant's Motion to Reduce Sentence/Modify Judgment Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release/Home Confinement), which is fully briefed. (Docs. 97, 99, 100.) Defendant seeks a compassionate modification of his sentence after contracting COVID-19, arguing that his chronic asthma, oromandibular dystonia and uncontrolled endocrine/autoimmune disorder put him at increased risk of a severe outcome. The Court held a status conference with counsel on May 28, 2020 to receive an update on Defendant's current medical condition. (Doc. 102.) For the reasons set forth herein, Defendant's motion is denied.

## I. The First Step Act

Until passage of the First Step Act of 2018 ("FSA"), early release was allowed only upon motion of the Director of the Bureau of Prisons ("BOP"). However, under the FSA a defendant can bring a motion to the Court after exhausting his administrative remedies:

> [T]he court upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted

> all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

18 U.S.C. § 3582(c)(1)(A). The Court may grant the reduction request if it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (citations omitted) ("Although it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons."). The purpose of the compassionate release provisions of the FSA is to allow defendants with extraordinary and compelling reasons to receive an expeditious resolution of a request for early release. An expeditious determination is especially important in a situation, like here, in which the coronavirus is rapidly spreading and the likelihood of contracting COVID-19 increases substantially by remaining in the BOP facility.

## II. Exhaustion of Administrative Remedies

The starting point of the Court's inquiry is whether the defendant has exhausted his administrative remedies by filing an administrative request for compassionate release with the warden of his facility. Defendant's sister, Lyndsay Harrington, sent a letter dated March 31, 2020, to Warden Ponce asking that her brother be granted a "Compassionate Release" pursuant to the FSA. (Doc. 97-1 at 5-6.) Her letter provided detailed and specific information about Defendant's pre-existing medical conditions—the same as those raised in Defendant's motion—that made him especially vulnerable to a bad outcome because he had contracted COVID-19. The Government argues that Defendant failed to exhaust his administrative remedies because the letter to the warden came from the Defendant's sister and not the Defendant. It does not contend that the letter failed to identify Defendant or to provide enough facts or detail for the warden to act.

Generally, Congress imposes exhaustion requirements in order to serve "the twin purposes of protecting administrative agency authority and promoting juridical efficiency." *Fones4All Corp v. F.C.C.*, 550 F.3d 811, 818 (9th Cir. 2008) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Ignoring the letter from Defendant's sister serves neither purpose. Ordinarily, the administrative request for compassionate release submitted by a third party would not satisfy the exhaustion requirement. However, these circumstances are not ordinary. The request is from a family member of a quarantined prisoner during a pandemic and the letter is sufficiently specific and detailed for the warden to understand what is requested and to act. The intent and spirit of the FSA would be frustrated if the letter were not deemed a request for administrative compassionate release. Defendant's requirement of exhausting his administrative remedies has been satisfied.

### III. Extraordinary and Compelling Reasons

Defendant's motion is based on his fear that he will suffer an adverse outcome due to contracting the virus.[1] Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. Neither side addressed these issues until the Court's May 28, 2020 status conference. Counsel informed the Court that Defendant had a mild case of the virus and has recovered. There is no evidence that the circumstances surrounding Defendant's

---

[1] Defendant asserts, "[g]iven his underlying high-risk medical conditions, Mr. McCollough has a unique susceptibility and potential for severe symptoms from the fatal COVID-19 virus while housed in a crowded facility with limited access to essential medical treatment." (Doc. 97 at 1.) He further explains that his underlying conditions, which put him at high risk, have been untreated while he has been waiting months for follow-up and treatment while in the Bureau of Prisons: "Mr. McCollough has uncontrolled and untreated medical conditions that both weaken his immune system and may become life threatening given his positive Covid-19 testing and lack of follow-up on BOP specialist referrals." (Doc. 97 at 6.) The Government responds, "BOP has taken a proactive approach to protect inmates. More beds and more housing have accommodated a more spread out living arrangement plan for the inmates. Telephone and email stations have been restricted as they are high touch locations. Most importantly, for asymptomatic or pre-symptomatic inmates, officials describe them being isolated quickly to prevent them from transmitting the virus to others." (Doc. 99 at 3.) Both sides acknowledge that Defendant tested positive for COVID-19 nearly two weeks before bringing his motion but nonetheless argue about the Defendant's chances of contracting the virus, a non-issue. The ineffective measures that BOP has taken to prevent the spread of the virus, upon which the Government relies, are irrelevant.

health or treatment are extraordinary or compelling. Arguments that the test results may be inaccurate or that Defendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities.

**IT IS ORDERED** that Defendant's Motion to Reduce Sentence/Modify Judgment Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release/Home Confinement) (Doc. 97) is **DENIED**.

Dated this 29th day of May, 2020.

Douglas L. Rayes
United States District Judge

- 4 -



The Honorable Judge Douglas L. Rayes
United States District Court (9th)
Sandra Day O'Connor U.S. Courthouse, Suite 526
401 W. Washington St, SPC 79
Phoenix, AZ 85003-2162